**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

NKEM ZOS, *et al.,*

    Plaintiffs,

v.                                            Civil Action No. 8:23-cv-00025-PX

THE NATIONAL ASSOCIATION OF
POWER ENGINEERS EDUCATIONAL
FOUNDATION, INC.,

    Defendant.

\*\*\*

## MEMORANDUM OPINION

Nkem Zos ("Zos") and Unique Health Clinic, LLC ("Unique Health") (collectively "Plaintiffs") sue the National Association of Power Engineers Educational Foundation, Inc. ("NAPEEF"), in its capacity as Landlord, for damages arising from Plaintiffs' temporary lockout from the leased premises. The Court previously dismissed the bulk of Plaintiffs' claims, but permitted the breach of contract, wrongful eviction, negligence, and tortious interference claims to proceed to discovery. ECF No. 12. The parties now cross-move for summary judgment. ECF Nos. 53 & 54. NAPEEF also moves for sanctions against Plaintiffs for a variety of discovery failures. ECF Nos. 46 & 47. The issues are fully briefed, and no hearing is necessary. *See* D. Md. Loc. R. 105.6. For the following reasons, NAPEEF's motion is granted save for the negligence claim which will be denied without prejudice and with instruction to refile the motion consistent with the Court's decision. Plaintiffs' summary judgment motion is denied. The sanctions motion at ECF No. 46 is granted in part, and the motion at ECF No. 47 is denied without prejudice to refile in the event the negligence claim ultimately survives challenge.

**I.    Background**

Zos is a licensed Maryland nurse practitioner who owns and operates Unique Health. ECF No. 3 ¶ 7. Unique Health provides a variety of medical services to patients. ECF No. 54-5 ¶ 2. In 2018, Zos and the prior owner of the building, Hanover, LLC ("Hanover") entered into a three-year Lease Agreement (the "Lease") to rent office space located at 7217 Hanover Parkway in Greenbelt, Maryland ("the unit"). ECF No. 53-3. The Lease includes an "exculpatory clause," in which the tenant agrees to not make any claim against the landlord for:

> any injury or loss, damage to person or property occurring upon the Demised Premises or the Property from any cause other than gross negligence or willful misconduct of Landlord. Landlord will not be liable to tenant or any other person or entity for loss of business or consequential damages. In the event that any claims described in this Section is made against Landlord, Tenant shall indemnify and hold Landlord harmless from any against any costs (including reasonable attorney's fees) liabilities, expenses, damages or judgments arising from such claims . . . .

*Id.* at 11. A separate Lease provision also makes clear that "all personal property and equipment" of the tenant "shall be there at the sole risk of Tenant; and in no event shall Landlord have any liability for any loss, damage, or theft thereof from any cause whatsoever." *Id.* at 16.

The original Lease was due to expire on July 31, 2021, *id.* at 5, after which Zos could continue her tenancy on a month-to-month basis. *Id.* at 6. If Zos continued to occupy the premises after the expiration date, the Lease made clear that Zos agreed "that all the obligations of [Zos] and all rights of Landlord applicable during the term of this Lease shall be equally applicable during such period of subsequent occupancy, whether or not a month-to-month tenancy shall have been created as aforesaid." *Id.* at 5–6.

In early July 2021, shortly before the Lease was set to expire, Hanover sold the premises to NAPEEF, ECF No. 53-5, and NAPEEF stepped into the shoes of Hanover as the Landlord. ECF No. 53-3 at 22 ("If the Landlord shall sell, convey or otherwise transfer the [] Premises

2

and/or the Building or its interest therein, then . . .the transferee shall be deemed the Landlord hereunder."). By the end of that month, Zos and NAPEEF executed a "First Amendment to the Lease Agreement" ("the Amendment") which bound the parties to the original Lease unless stated otherwise in the Amendment. ECF No. 53-7 at 1. The Amendment also extended the original Lease by one year. *Id.* at 2.

Pertinent to this action, Paragraph 1(g) of the Amendment entitled "Landlord's Access to the Demised Premises" expressly allowed "Landlord and Landlord's agents, employees and representatives" to "enter upon the Demised Premises in order to inspect and examine same and to show the Demised Premises to prospective tenants and others." *Id.* at 5. The provision further required the Tenant to "fully cooperate with Landlord with regard to Landlord's access to the Premises as set forth above and shall not, in any event, interfere with any such access." *Id.* Paragraph 1(f) set out certain requirements for how each party will deliver any required written notices to each other and how rent will be paid. *Id.* at 4.

In April of 2022, NAPEEF hired a new Chief Executive Officer ("CEO"), Dave Dargenzio. ECF No. 53-2 at 13. As part of his orientation, the outgoing CEO took Dargenzio to survey the leased premises. *Id.* at 15. During the survey, Dargenzio observed that Plaintiffs' unit appeared unoccupied. *Id.* No one was in the establishment, and looking into a side window, Dargenzio saw mail piled up to around eight-to-twelve inches high. *Id.* Dargenzio also peered through the mail slot and saw "mail everywhere" which suggested to him that "somebody hasn't been in [the unit] for some time." *Id.* NAPEEF's front-office staff had also mistakenly informed Dargenzio that NAPEEF did not have an executed lease on file for that unit, so he assumed the unit was vacant. *Id.* at 16–17. Dargenzio next checked with NAPEEF's accounting specialist who stated that they had not received any rental payments for the unit. *Id.* at 18. Since NAPEEF could not locate a

3

key for the unit, Dargenzio authorized two staff members and a locksmith to enter and rekey the locks to the unit. ECF No. 53-9 at 10.

NAPEEF staff rekeyed the unit on June 14, 2022. *Id.* at 3. NAPEEF staff also removed a dehumidifier, which they mistakenly believed was NAPEEF's property, for required repairs. *Id.* at 8. Dargenzio directed that the dehumidifier be returned to the unit after it was fixed. *Id.*

It was not until Zos returned from an extended vacation on the afternoon of June 28, 2022, that she became aware of her inability to access the unit. ECF No. 54-5 ¶¶ 6–7. When Zos arrived at the unit that afternoon, she found the Unique Health exterior sign laying on the sidewalk. *Id.* Because Zos' keys no longer worked, she immediately contacted Dargenzio's predecessor with whom she had prior communications to gain access. *Id.* ¶ 8.

By 9:00 AM the following day, Dargenzio met Zos at her unit to apologize for the mix-up and give her new keys. ECF No. 53-1 at 14; ECF No. 53-2 at 14. Dargenzio took full responsibility for believing the unit was vacant and admitted to Zos that the dehumidifier had been removed in error. *Id.* Nonetheless, Zos reported the incident as a "burglary" to law enforcement. ECF No. 53-9 at 12. The Greenbelt Police responded but took no further action. *Id.* at 12–13.

When Zos gained entry to the unit, she noticed her antique desk was missing.[1] ECF No. 54-5 ¶ 13. NAPEEF staff vigorously denies having removed anything from the unit apart from the dehumidifier. ECF No. 53-9 at 8. Zos also noticed an "awful smell" that Zos believed stemmed from a build-up of humidity in the office. ECF No. 54-5 ¶ 10.

Following the June rekeying incident, Plaintiffs continued to occupy the unit through at least September 2022. ECF No. 54-5 ¶¶ 24–27. Dargenzio attempted to return the dehumidifier

---

[1] Plaintiffs produced a stock image of an antique desk found online as evidence of the missing desk. ECF No. 53-16. Beyond this, the record includes nothing more than Zos' contention that NAPEEF staff took her desk. She has not generated any evidence to support the claim.

4

on several occasions to no avail. In August, Dargenzio emailed Zos about arranging its return but she never responded. ECF No. 53-11 at 4. Then again in September, Dargenzio reported to Zos that he had contacted the tenant next door to Unique Health to notify him when Zos appeared at the premises so he could return the dehumidifier. ECF No. 53-11. However, the other tenant never saw Zos in the unit. *Id.* Dargenzio also went in person to the unit to deliver the dehumidifier when he spotted Zos' car in the parking lot, but no one answered the door. ECF No. 53-2 at 26. Zos also did not secure a replacement dehumidifier. ECF No. 54-5 ¶ 19.

On August 17, 2022, Dargenzio notified Zos that NAPEEF intended to raise her rent because the prevailing rental market commanded higher rates. ECF No. 54-7 at 1. Dargenzio also tried to clear the air with Zos about the June rekeying incident. He noted that he had tried to be "conciliatory," admitting his error in having rekeyed the unit, but Zos escalated the situation "to another level" by calling the police. Accordingly, Dargenzio added that if Zos wanted "to continue being our tenant, may I suggest that we start over with treating each other with dignity & respect." *Id.* Zos perceived this email as a threat, and immediately started looking for a new office location that day. ECF No. 54-5 ¶ 21. Although Zos contends she left the premises earlier, she did not give her notice to NAPEEF until November 1, 2022. *Id.* ¶ 27.

Plaintiffs assert that this non-renewal of the Lease prompted them to lose patients. ECF No. 54-5 ¶ 28. According to Zos' unsworn, unsupported summary of supposed loss, Zos asserts losses of $103,140 of "revenue" from *potential* "canceled visits," $137,500 of revenue in "*potential* canceled appointments," and $170,000 in *potential* lost revenue for another employee's lost visits. ECF No. 54-9. No other evidence, such as company books, records, invoices, or any other documentation explains these figures. *Id.*

5

Plaintiffs also contend that the removal of the dehumidifier caused mold to grow in the unit, rendering the space uninhabitable. On this point, Plaintiffs submit the results of mold testing conducted in one room of the unit on September 23, 2022 by "Rudd's Indoor Environment." ECF No. 54-10. The examiner, whose bona fides are unknown, identified mold in the unit on that day and recommended a "professional remediation for the office and sitting area." *Id.* at 3. The report also noted that the mold "might cause an allergen type of response in sensitive people," such as "symptoms of hay fever or asthma." *Id.*

In October 2022, Plaintiffs filed suit in Prince George's County Circuit Court for an array of common law claims. ECF No. 3. NAPEEF timely removed the action to this Court, successfully moved for dismissal of certain claims, and thereafter engaged in discovery on the remaining causes of action. ECF Nos. 1, 8 & 16. NAPEEF now contends that judgment should be granted in its favor on all remaining causes of action: breach of contract (Count I), wrongful eviction (Count II), negligence (Count IV), and tortious interference with business (Count V).[2] ECF No. 53. Plaintiffs cross move for summary judgment in their favor on the breach of contract and wrongful evictions claims and separately argue that summary judgment should be denied as to the other claims. ECF No. 54. The Court considers each argument in turn.

## II.    Standard of Review

Summary judgment is appropriate when the Court, construing all evidence and drawing all reasonable inferences most favorably to the non-moving party, finds no genuine dispute exists

---

[2] NAPEEF also moved for leave to file a surreply, largely to reiterate its displeasure with Plaintiffs' chronic failure to adhere to filing deadlines and to urge the Court to strike Plaintiffs' response and cross-motion as untimely. ECF Nos. 58 & 58-1. Although surreplies are generally disfavored, they "may be permitted when the moving party would be unable to contest matters presented to the court for the first time in the opposing party's reply." *Khoury v. Meserve*, 268 F. Supp. 2d 600, 605 (D. Md. 2003), *aff'd*, 85 F. App'x 960 (4th Cir. 2004). NAPEEF rightly objects to Plaintiffs' repeated failure to adhere to pleading deadlines and follow basic procedural rules, but it could have raised this issue in reply. Thus, NAPEEF has failed to show good cause for why the Court should accept the surreply. The motion is denied.

as to any material fact, thereby entitling the movant to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see In re Fam. Dollar FLSA Litig.*, 637 F.3d 508, 512 (4th Cir. 2011). Genuine disputes of material fact are not created "through mere speculation or the building of one inference upon another." *Othentec Ltd. v. Phelan*, 526 F.3d 135, 140 (4th Cir. 2008) (quoting *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985)). "A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (quoting former Fed. R. Civ. P. 56(e)) (alteration in original). "Where, as here, cross motions for summary judgment are filed, a court must 'evaluate each party's motion on its own merits, taking care [in each instance] to draw all reasonable inferences against the party whose motion is under consideration.'" *Snyder ex rel. Snyder v. Montgomery Cnty. Pub. Sch.*, No. DKC 2008-1757, 2009 WL 3246579, at *5 (D. Md. Sept. 29, 2009) (quoting *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1391 (Fed. Cir. 1987)).

### III. Analysis

#### A. Breach of Contract (Count I)

Plaintiffs contend that NAPEEF breached the Lease in two specific ways. First, when Dargenzio and staff entered the leased premises on June 14, 2022, they did so "with the intent to evict Tenant for non-payment of rent," and not for the purposes authorized in Paragraph 1(g) of the Amendment. ECF No. 54 at 18; ECF No. 3 ¶ 25–29. Second, Plaintiffs aver that NAPEEF breached Paragraph 1(f) of the Amendment when it rekeyed the premises and removed the sign and dehumidifier without proper notice. *Id.*

To survive challenge, the plaintiff must adduce some evidence that the defendant owed her a contractual duty as articulated in these provisions that the defendant breached. *See Taylor v. NationsBank, N.A.*, 365 Md. 166, 175 (2001); *see also* 10 Corbin on Contracts § 53.1 (2021). Skeletal averments of generalized "breach," without factual support will not suffice. *Pritchett v. General Motors Corp.*, 650 F. Supp. 758, 763 (D.Md.1986) (quoting *Continental Masonry Co. Inc. v. Verdel Construction Co., Inc.*, 279 Md. 476, 481 (1977)). Because Plaintiffs have neither put forward a coherent breach theory, nor adduced evidence to support the claim, the Court must grant summary judgment in NAPEEF's favor.

As to the alleged breach of Paragraph 1(g), this provision requires the tenant to grant reasonable access to the landlord for, among other things "inspection" of the unit. ECF No. 53-7 at 5. Plaintiffs' Complaint avers that NAPEEF breached the provision because it "entered [the unit] on June 28, 2022 with the intent to evict [Plaintiffs] for non-payment of rent and not for the purpose of inspection." ECF No. 3 ¶ 28. When viewing the facts most favorably to Plaintiffs, nothing suggests that any of the NAPEEF staff entered the premises *at all* on that date as the rekeying had taken place two weeks prior. Additionally, no evidence exists that NAPEEF ever entered the premises with the intention to "evict" Plaintiffs. The claim thus fails as a matter of law.

The asserted breach of Paragraph 1(f) is even more perplexing. This provision merely states that for any communications required under the Lease, such communications shall be in writing and sent to certain listed addresses. ECF No. 53-7 at 4. The provision also specifies the address to which the tenant should direct her rent payments. *Id.* But nothing supports Plaintiffs asserted liability theory that NAPEEF is somehow required under this provision to have notified Zos before rekeying the unit or removing the dehumidifier and sign. ECF No. 3 ¶ 29. Because

Paragraph 1(f) at most sets out *where* and *how* communications shall be directed, the Court simply finds no evidence supporting the claimed breach. ECF No. 53-7 at 4. Accordingly, NAPEEF's motion for summary judgment as to Count I is granted, and Plaintiffs' motion is denied.

      **B.**      **Tortious Interference with Business (Count V)**

NAPEEF seeks summary judgment in its favor as to tortious interference, and Plaintiffs oppose their motion. In Maryland, the common law tort may be pursued under two potential theories: either where the defendant induces the breach of an existing contract between plaintiff and a third party; or where the defendant "maliciously or wrongfully" interferes with the plaintiff's business relationships without necessarily inducing a formal breach of a third-party contract. *Nat. Design, Inc. v. Rouse Co.*, 302 Md. 47, 69 (1984). Plaintiffs, however, fail to adduce any evidence to allow either theory.

First, as to the contractual interference theory, NAPEEF rightfully points out that Plaintiffs have generated no evidence that Plaintiffs had any contractual relationships with any third party with which NAPEEF interfered. ECF No. 53-1 at 19. Merely saying one has contracts without providing any evidence of the same is simply not sufficient to sustain the claim.

Second, as to the tortious interference with business relationships liability theory, Plaintiffs must generate some evidence that NAPEEF acted intentionally and willfully in a manner calculated to cause damage to the plaintiffs in their lawful business, and with the unlawful purpose of causing such damage and loss, without right or justifiable cause. *See Kaser v. Fin. Prot. Mktg., Inc.*, 376 Md. 621, 628 (2003) (citing *Alexander & Alexander Inc. v. B. Dixon Evander & Assocs., Inc*., 336 Md. 635, 652 (1994); *see Kwang Dong Pharm. Co. v. Han*,

205 F. Supp. 2d 489, 497 (D. Md. 2002).  Defendant's wrongful conduct must be more than just the defendant pursuing his own "business interest;" it must be independently "wrongful or unlawful." *Alexander v. B. Dixon Evander & Assocs.,* 336 Md. 635, 657 (1994).  If the interference is in the name of business competition, a tort may still lie where the means used were improper.  *See Macklin v. Robert Logan Assocs.*, 334 Md. 287, 301–02 (1994).  Such wrongful or unlawful acts include "violence or intimidation, defamation, injurious falsehood or other fraud, violation of criminal law, and the institution or threat of groundless civil suits or criminal prosecutions in bad faith." *Id.* (quoting *K & K Mgmt. v. Lee*, 316 Md. 137, 166 (1989)).

Again, when viewing the evidence most favorably to the Plaintiffs, nothing supports that NAPEEF acted willfully or intentionally with the specific purpose of interfering with the business of Unique Health.  At best, the evidence demonstrates mistake: that Dargenzio and NAPEEF's accounting department believed that the unit was vacant when it was not.  ECF No. 54 at 15.  But no evidence demonstrates that NAPEEF acted with the requisite intent to harm Plaintiffs' business.

Plaintiffs, for their part, seem to argue that Dargenzio's emails to Zos reflect a deliberate effort to "push" Plaintiffs out of the premises "using the 60-day notice provision in the amended lease." ECF No. 54 at 8.  Even if the Court agreed with Plaintiffs that the emails reveal NAPEEF's intent to rent the premises at the market rate, whether to Plaintiffs or a new tenant, that alone does not constitute interference with Plaintiffs' business relationships.  Rather, the evidence uniformly reflects a rational business decision to either secure the market rate from Zos or terminate the tenancy.  Because NAPEEF's rational business decisions cannot form the basis of the claim, even if such decisions disadvantage the plaintiffs, this claim cannot proceed.  The Court grants summary judgment in favor of NAPEEF and denies Plaintiffs' motion.

### C. Wrongful Eviction (Count II)

Plaintiffs argue that they are entitled to summary judgment on the wrongful eviction claim because the undisputed facts demonstrate that Zos could not access the unit when she returned from vacation on June 28, 2022. ECF No. 54 at 18. Plaintiffs also contend that NAPEEF's removal of the dehumidifier created uninhabitable conditions that forced Plaintiffs from the unit. *Id.* at 20.

In Maryland, "wrongful" conviction may be either actual or constructive eviction. *BTR Hampstead, LLC v. Source Interlink Distrib., LLC*, 194 Md. App. 538, 555–60 (2010). Actual eviction occurs when the tenant is physically ousted from or dispossessed of the leased premises. *Id.* at 555. A constructive eviction occurs when the acts of a landlord cause serious or substantial interference with the tenants' enjoyment of the property which results in the tenant vacating the premises. *Stevan v. Brown*, 54 Md. App. 235, 240 (1983). Acts resulting in constructive eviction the landlord's failure "to furnish heat, elevator service, and necessary electricity . . . as [well as] the failure to furnish sanitary restroom facilities . . . and frequent flooding of the premises because of the landlord's fault." *Id.* (internal citations omitted).

The heartland of Plaintiffs' claim, most charitably read, is one of constructive eviction. ECF No. 54 at 21. And on this theory, the Court previously permitted the claim to proceed because Plaintiffs had plausibly averred that NAPEEF's damage to the offices, to include the creation of moldy conditions, led to Plaintiffs' ouster. ECF No. 12 at 4. NAPEEF now contends that the singular "preliminary" mold report based on testing completed on September 23, 2022 does not establish the kind of inhabitable conditions necessary to support the claim. ECF No. 53-1 at 23. The Court agrees.

11

NAPEEF rightly points out that because mold contamination may arise for many reasons, a plaintiff must offer expert testimony as to the "specific cause of the mold damage. . . . [L]ay testimony and opinion is simply not sufficient." *Norris v. PNC Bank, N.A.*, No. CV ELH-20-3315, 2023 WL 3688335, at *21 (D. Md. May 26, 2023) (quoting *Munguia v. State Farm Lloyds*, No. CV M-02-115-H, 2006 WL 8448823, at *1 (S.D. Tex. Oct. 19, 2006), *aff'd sub nom. Sailer v. State Farm Lloyds*, 268 F. App'x 367 (5th Cir. 2008). The evidence in this regard is woefully inadequate.

The singular report from "Rudd's Environmental" certainly does not amount to the opinion of an "expert," as Plaintiffs wholly failed to comply with expert disclosure requirements, *see* Fed. R. Civ. P. 26(a)(2), or to satisfy the most basic requirements under the Federal Rules of Evidence. *See* Fed. R. Evid. 702. Indeed, the report, construed most favorably to Plaintiffs, at best shows that mold was present in one room of the unit as of September 23, 2022. It says nothing about the source of the mold. Without more, Plaintiffs have failed to generate any genuine issue of material fact on the cause of the mold. *See, e.g.*, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (explaining a party opposing summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial."). Thus, the constructive eviction claim fails as a matter of law.

As for actual eviction, Maryland makes clear that if the landlord engages in conduct "equivalent to an eviction" such that the tenant was "deprived of his pecuniary interest under the lease, he [is] entitled to recover as damages the loss suffered by him. . . ." *Stevan*, 54 Md. App. at 243 (quoting *Weighley v. Muller*, 51 Pa. Super. 125, 132 (1912)). Damages arise only where the landlord's "conduct does not cease promptly after an appropriate request by the tenant to the

landlord." Restatement (Second) of Property, Land. & Ten. § 6.1 (1977); *see id.*; *cf. 41st RKC Trib. Assocs. v. Small Computer Co.*, 495 N.Y.S.2d 640, 641 (Civ. Ct. 1985).

Construing the evidence most favorably to Plaintiffs, NAPEEF dispossessed them of the unit for less than twenty-four hours, from the afternoon of June 28, 2022 to 9 AM the following morning.[3]  Even if such de minimus interference in a commercial lease could support the cause of action, the claimed damages "must be reasonably certain, and not based on speculative, remote, or uncertain figures."  *Dierker v. Eagle Nat. Bank*, 888 F. Supp. 2d 645, 658 (D. Md. 2012) (internal quotation marks omitted) (citation omitted).  Opinions or estimates of lost profits must be based on objective facts, figures, or data, not guesswork.  *CompuSpa, Inc. v. Int'l Bus. Machines Corp.*, No. CIV.A. DKC 2002-0507, 2004 WL 1459272, at *8 (D. Md. June 29, 2004) (citing *Hollywood Fantasy Corp. v. Gabor*, 151 F.3d 203, 213 (5th Cir.1998)).

Viewing the record most favorably to Plaintiffs, the claimed "damages" rest on pure speculation.  ECF No. 54-10.  Zos contends she had to "cancel appointments" that day.  However, she provides no evidence of that or any lost profits as a result.  Zos' say-so is not enough.  Thus, summary judgment is granted in NAPEEF's favor on the wrongful eviction claim.

### D. Negligence (Count IV)

The Court lastly turns to the negligence claim.  Plaintiffs' liability theory centers on Dargenzio's failure to adequately check that the unit was not leased to Plaintiffs prior to changing the locks and removing her dehumidifier and antique desk.  ECF No. 3 ¶¶ 42–47.  NAPEEF's sole argument for summary judgment is that Plaintiffs have waived any right to pursue a mere negligence claim per the Lease terms.  ECF No. 53-1 at 10.  NAPEEF emphasizes

---

[3] Zos concedes that prior to this time, she had been on vacation, ECF No. 54-5 ¶ 6, and no evidence suggests she or any of her employees attempted to occupy the premises between June 14 and June 28, 2022.

that because Plaintiffs agreed to the exculpatory clause, they gave up the right to claim "any injury or loss, damage to person or property occurring upon the Demised Premises or the Property from any cause other than gross negligence or willful misconduct of Landlord."  Thus, says NAPEEF, the negligence claim fails on this basis alone.  ECF No. 53-1 at 11.  Plaintiffs, in response, summarily contend that they have met the higher evidentiary bar of gross negligence or willfulness, ECF No. 54 at 9, but they provide no real proof of the same.

Neither party, however, has properly addressed whether the exculpatory clause itself may be enforced as a matter of law.  In Maryland, exculpatory clauses that waive liability for a defendant's negligence are valid only "in the absence of legislation to the contrary."  *Seigneur v. Nat'l Fitness Inst., Inc.*, 132 Md. App. 271, 280 (2000)*.*  If the legislature has declared such clauses void as a matter of public policy, then the Court cannot override this legislative pronouncement.  *Id.* at 281.

Applicable here, Section 8-105 of the Maryland Code, Real Property Article reads:

> If the effect of any provision of a lease is to indemnify the landlord, hold the landlord harmless, *or preclude* or exonerate *the landlord from any liability to the tenant*, or to any other person*, for any injury, loss, damage, or liability arising from any omission, fault, negligence, or other misconduct of the landlord on or about the leased premises* or any elevators, stairways, hallways, or other appurtenances used in connection with them, and not within the exclusive control of the tenant, the provision is considered to be against public policy and void.  An insurer may not claim a right of subrogation by reason of the invalidity of the provision.

Md. Code Ann., Real Prop. § 8-105 (emphasis added).  Section 8-105 appears on its face to cover the exculpatory provisions in the Lease, thus invalidating any waiver of pursuing the negligence claim against NAPEEF.  *See Prince Phillip P'ship v. Cutlip*, 321 Md. 296, 303 (1990).  That said, Section 8-105 would not apply to any injury arising in an area of the premises that is "within the exclusive control of the tenant."  In such circumstances, "an indemnification provision is not rendered void by operation of § 8-105." *Id.* at 302.

14

Neither party addresses this threshold question. Rather, each implicitly asks that the Court interpret the contours of the exculpatory clause even though it may very well be void as a matter of law. Out of an abundance of caution, therefore, the Court will deny without prejudice NAPEEF's motion for summary judgment on the negligence claim. NAPEEF may renew its motion, if it wishes, within twenty-one days from the date of this Opinion and Order. In the motion and response, the parties must address whether Section 8-105 invalidates the applicability of the exculpatory clause.[4] The parties must also address the propriety of summary judgment on the merits of the negligence claim in the event the exculpatory clause is void under Section 8-105. The motion as to the negligence claim is thus denied without prejudice.

## IV.     NAPEEF's Motions for Sanctions

The Court lastly turns to NAPEEF's sanctions motions. ECF Nos. 46 & 47. NAPEEF asks this Court to sanction Plaintiffs pursuant to Federal Rule of Civil Procedure 37 because Zos failed to attend her deposition in her individual capacity and as the corporate representative of Unique Health. ECF No. 46. NAPEEF next asks for sanctions to address Plaintiffs' failure to comply with the Court's May 7, 2024 Order, directing them to provide complete discovery responses. ECF 47. The Court considers each motion in turn.

Rule 37(d) permits sanctions when a deponent fails to appear for her deposition after having received proper notice. Fed. R. Civ. P. 37. Plaintiffs do not dispute that Zos had been given proper notice of the depositions scheduled to take place on June 19, 2024. ECF No. 49. Nor do Plaintiffs dispute that they had agreed to the date, time, and place of the deposition well in advance. *Id.* Indeed, Plaintiffs admit that it was not until the deposition "day itself" that they

---

[4] If NAPEEF refiles this motion, it must include a legible copy of the Lease. The Court cannot read most of the Lease attached at ECF No. 53-3.

15

realized "it was a federal holiday and that businesses were closed." *Id.* ¶ 3. But the holiday in no way prevented Plaintiffs from sitting for the deposition. And Plaintiffs provide no other good cause for choosing not to attend the deposition. Accordingly, the Court grants the motion and orders Plaintiffs to reimburse NAPEEF for the court reporting costs associated with the deposition, totaling $557.20. ECF No. 46-7. Plaintiffs are also directed to reimburse NAPEEF for the reasonable expenses incurred for attendance. NAPEEF shall submit their documentation of attorney's fees related solely to attendance. The Court recognizes that Zos ultimately sat for deposition on June 27, 2024, and so the Court will not assess any fees associated with NAPEEF's preparation for the depositions.

NAPEEF also ask this Court to preclude Plaintiffs from presenting any claims for lost earnings or earning capacity because they have failed to provide complete discovery responses as to damages. ECF No. 47. Pursuant to Rule 37(b)(2)(a), the Court may sanction the Plaintiffs for failing to provide complete discovery as ordered by "prohibiting the disobedient party from supporting . . . designated claims . . ., or from introducing designated matters in evidence." Fed. R. Civ. P. 37(b)(2)(a). Plaintiffs do not dispute that they failed to produce documents supporting their damages claims. ECF No. 51. Instead, they argue that they have given everything they have, *id.*, which does not appear to be much. However, the Court has already granted summary judgment on the tortious interference, wrongful eviction, and contract claims. As to the negligence claim, if the exculpatory clause applies, the great likelihood is that this claim, too will be disposed of on summary judgment. *See supra* pp. 14–15. And even if it survives challenge, the Court can confidently say that Plaintiffs have failed to adduce sufficient evidence of actual pecuniary harm arising from the claim. Accordingly, the Court will deny the motion without

prejudice to refile in the event the negligence claim survives challenge on the merits. At that point, the Court will decide what, if any, sanction is proper in advance of trial.

**V.    Conclusion**

For the foregoing reasons, the Court grants NAPEEF's motion for summary judgment on Count I (breach of contract), Count II (wrongful eviction), and Count V (tortious interference with business). ECF No. 53. It denies the motion without prejudice to refile as to Count IV (negligence). The Court denies Plaintiffs' summary judgment motion entirely. ECF No. 54. The Court grants in part NAPEEF's motion for sanctions (ECF No. 46) and orders Plaintiffs to reimburse NAPEEF for the court-reporting costs associated with the deposition, totaling $557.20, as well as reasonable attorney's fees for attendance only. Defendants shall submit their calculation of attorney's fees related solely to attendance. The Court denies NAPEEF's motion for sanctions (ECF No. 47) without prejudice to refile in the event the negligence claim survives challenge.

A separate Order follows.

<u>March 13, 2025</u>                                                                    <u>         /S/                              </u>
Date                                                                                           Paula Xinis
                                                                                                    United States District Judge